UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL RHYNES,

Plaintiff,

Case No. 25-cv-06174

-vs-

THE CITY OF ROCHESTER, THE ROCHESTER CITY POLICE DEPARTMENT, THE MONROE COUNTY DISTRICT ATTORNEY, MONROE COUNTY, CRESSIDA A. DIXON, MONROE COUNTY PUBLIC ADMINISTRATOR, AS TEMPORARY ADMINISTRATOR OF THE ESTATE OF LOUIS J. TROTTO (deceased), and CRESSIDA A. DIXON, MONROE COUNTY PUBLIC ADMINISTRATOR, AS TEMPORARY ADMINISTRATOR OF THE ESTATE OF WILLIAM J. BARNES (deceased), and KYLE R. ANDREWS, NIAGARA COUNTY PUBLIC ADMINISTRATOR, AS TEMPORARY ADMINISTRATOR OF THE ESTATE OF CHARLES R. SCHAEFER (deceased), and SHEILA G. JACKSON, AS EXECUTRIX OF THE ESTATE OF JULIAN P. JACKSON (deceased), and LEONARD BORIELLO, LOUIS J. ROTUNNO, LYNN R. PRESCOTT, GARY SEXTONE, DOUGLAS STODDART, MICHAEL GARNER, CHARLES SIRAGUSA, AND JOHN/JANE DOE NOS. 1 THROUGH 10, BEING UNKNOWN EMPLOYEES OF THE CITY OF ROCHESTER AND/OR MONROE COUNTY,

Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHARLES SIRAGUSA'S MOTION TO DISMISS**

Respectfully submitted by:

Michael Rothenberg, Esq.
David Rothenberg, Esq.
ROTHENBERG LAW
*Attorneys for Defendant Charles Siragusa*
45 Exchange Boulevard, Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
Fax: (585) 232-4746
Email: michael@rothenberglawyers.com
Email: david@rothenberglawyers.com

Defendant Charles Siragusa respectfully submits this memorandum of law in support of his motion to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) based on the doctrine of absolute immunity.

## I. Introduction

Plaintiff Michael Rhynes brings this federal lawsuit pursuant to 42 U.S.C. § 1983, alleging constitutional and state-law violations during the course of plaintiff's prosecution from 1984 to 1986. One of the many defendants is United States District Judge Charles Siragusa (hereinafter "Siragusa"), who was at all times relevant to plaintiff's Complaint "an assistant district attorney employed by the Monroe County District Attorney's Office" and "acting in the scope of his employment with the county and under color of state law." Complaint (Compl.), Dkt. No. 1 ¶ 14. However, the fundamental flaw in plaintiff's lawsuit against Siragusa is that Siragusa was unquestionably performing traditional prosecutorial functions intimately associated with the judicial phase of a then-pending criminal proceeding and is thus entitled to prosecutorial immunity afforded under the doctrine of absolute immunity. Indeed, plaintiff explicitly pleads in his Complaint that the entirety of the alleged misconduct on Siragusa's behalf occurred after plaintiff had been arrested and indicted, and during the course of Siragusa's role as an advocate in a then-pending criminal prosecution. Accordingly, the Court should dismiss with prejudice all of the claims against Siragusa on the basis of absolute immunity.

## II. Statement of Facts

The following facts are taken from the Complaint and presumed to be true for the purposes of this motion.[1]

[1] This Statement of Facts is based on the allegations in the Complaint and does not constitute an admission of any fact. Defendant reserves the right to contest any fact alleged in the Complaint or recited herein.

**A. Plaintiff's arrest and indictment**

On September 27, 1984, there was an attempted robbery and double homicide at Rico's Bar on Lexington Avenue in Rochester, New York. *See* Compl. ¶ 27. At the time, plaintiff was sleeping "in his mother Carrie Rhynes' house, located at 12 Kappel Place, Rochester, New York." *Id*. The Rochester City Police began an investigation, and its initial suspect list included plaintiff as a possible suspect. *Id*. ¶¶ 28, 29.

Only ten days later, on October 6, 1984, plaintiff was arrested by the Rochester Police Department and charged with robbery and murder. Compl. ¶¶ 42, 43. A grand jury was also empaneled on October 6, 1984. *Id*. ¶¶ 15, 44. Various individuals testified before the grand jury, all of whom are alleged to have testified falsely. *Id*. ¶¶ 43-47. Annie Maddox and Vernessa Maddox testified on October 9, 1984, *see id.* ¶¶ 43, 44, 47, 48; Ali Hasan testified on October 10, 1984, *see id.* ¶ 45; and Julian Jackson testified on October 9 and 11, 1984, *see id.* ¶ 46. On October 12, 1984, the grand jury returned an indictment against plaintiff. *Id*. ¶ 47.

The Complaint does not include a single allegation concerning Siragusa before plaintiff was arrested on October 6, 1984; nor does the Complaint include a single allegation concerning Siragusa before the grand jury returned the indictment against plaintiff on October 12, 1984.

**B. Plaintiff's post-arrest and post-indictment allegations against Siragusa**

The Complaint alleges two events in which Siragusa was involved. The first allegation concerning Siragusa appears in paragraph 49 of the Complaint. On November 26, 1984, *more than six weeks after plaintiff had been arrested by the RPD and indicted by a grand jury*, Siragusa – as a Monroe County first assistant district attorney – offered a plea deal to Thurmond Dicker, an arrested individual who claimed to have knowledge concerning the crimes at Rico's Bar. *See* Compl. ¶ 49. Specifically, plaintiff alleges that Siragusa "coerced and/or coached and offered

Dicker to plea to lesser charges of attempted robbery in exchange for Dicker's testimony at trial of the already indicted Jesse Hammock, Adrian Jackson, and [plaintiff] RHYNES for the Rico's Bar murders." *Id*.

The second allegation concerning Siragusa involves his attendance at a meeting with Roy Timmons sometime after June 1986, *more than one year and seven months after plaintiff had been arrested by the RPD and indicted by a grand jury*. *See* Compl. ¶ 69. According to the Complaint, Timmons contacted Monroe County Investigator Schaefer in June 1986 and offered "to recite untruthfully that [plaintiff] had confessed his participation in the Rico's Bar robbery and murders in conversations with Timmons while they were together in Monroe County Jail in 1984." *Id*. ¶ 64. At a first meeting following Timmons' offer, Schaefer and "upon information and belief, a JOHN/JANE DOE ROCHESTER CITY POLICE OFFICER" met with Timmons and "coached and/or coerced Timmons and fed Timmons details of the botched robbery and murders which Timmons falsely stated that RHYNES had told to him in jail conversations." *Id*. ¶ 65. The Complaint does not allege that Siragusa attended the first meeting with Timmons.

Rather, the Complaint alleges that Siragusa attended a second meeting with Timmons where "Timmons did not offer any details on his own, just the details SCHAEFER supplied to him. SCHAEFER had told him that RHYNES was the shooter, Timmons reiterated that and that's what SCHAEFER, STODDART, and/or SIRAGUSA said he should go with." Compl. ¶ 67. According to the Complaint, "Timmons' statements were fabricated with the active and eager assistance of SCHAEFER, SIRAGUSA, STODDART, JOHN/JANE DOE ROCHESTER CITY POLICE OFFICER and the JOHN/JANE DOE ADA in Timmons' case, who knew or should have been known their falsity." *Id*. ¶ 67. Thereafter, "SCHAEFER, STODDART, SIRAGUSA, and

Relin arranged for Timmons to be immediately released from the Monroe County Jail in return for his statement and testimony." *Id*. ¶ 68.

These are the only events alleged in the Complaint that involve any conduct on behalf of Siragusa with respect to plaintiff's prosecution following his arrest and indictment.

**C. Plaintiff's allegations of a longstanding policy at the District Attorney's Office**

Apart from the allegations concerning Siragusa's involvement with plaintiff's prosecution, the Complaint also contains general allegations concerning a purported longstanding policy of the "D.A.'s Office and COUNTY [in] failing to disclose *Brady* material and presenting false and misleading testimony at trial." Compl. ¶ 82.

Plaintiff alleges, generally, that "defendants in the MONROE COUNTY DISTRICT ATTORNEY'S OFFICE failed to turn" over *Brady* material – namely, "documentation and other evidence of the false statements that was exculpatory" – which resulted "in the failure to inform plaintiff's counsel in particular of the fact that witnesses had been coached, fed information and coerced." Compl. ¶ 75.[2] Plaintiff alleges that these *Brady* violations resulted in his conviction on August 15, 1986. *See id*. ¶¶ 76, 82.

As an anecdote in support of this alleged longstanding policy, the Complaint contains allegations concerning a separate murder prosecution of an individual named David Larsen. Plaintiff alleges – in connection with that separate prosecution – that "SIRAGUSA refused to interview witnesses whose testimony could potentially aid defendant Larson, who was being prosecuted for murder." Compl. ¶ 91. There is no allegation that Siragusa's alleged refusal to

[2] Lumping Siragusa with other defendants in conclusory allegations is not sufficient to allege any actionable conduct on Siragusa's behalf. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("A complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct fails to satisfy this minimum standard.")

interview witnesses in the Larsen prosecution had anything to do with plaintiff's prosecution. These allegations are only made in support of the alleged long-standing policy.

**D. Plaintiff's conviction is vacated**

On December 8, 2023, the Monroe County Supreme Court issued an order vacating plaintiff's conviction based on affidavits from Joe Smith and Roy Timmons, both of who affirmed that they had lied at plaintiff's trial. *See* Compl. ¶¶ 77-79. Plaintiff was released on December 19, 2023, and the indictment was dismissed on January 8, 2024. *Id*. ¶ 80.

## III. Procedural Background

Plaintiff commenced this action on April 1, 2025, asserting claims against numerous defendants and alleging multiple constitutional and state-law violations under 42 U.S.C. § 1983 and New York State law. Plaintiff named Siragusa in his individual capacity[3] based on conduct occurring while Siragusa was "an assistant district attorney employed by the Monroe County District Attorney's Office," for which Siragusa was "acting in the scope of his employment with the county and under color of state law." Compl. ¶ 14. As it concerns Siragusa, the Complaint asserts five causes of action. The third and fifth causes of action allege civil rights violations based on 42 U.S.C. § 1983 (*id*. ¶¶ 171-181, 194-197); the sixth cause of action alleges false imprisonment (*id*. ¶¶ 198-199); the seventh cause of action alleges malicious prosecution (*id*. ¶¶ 200-201); and, the ninth cause of action seeks damages for negligence (*id*. ¶¶ 206-209).

[3] To the extent any of plaintiff's claims are against Siragusa in his official capacity as an employee of the Monroe County District Attorney's Office, those claims are also subject to dismissal pursuant to the Eleventh Amendment. *See D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.").

On or about June 4, 2025, Siragusa accepted service of the Summons and Complaint through undersigned counsel, and the parties agreed that Siragusa's deadline to answer, move against, or otherwise respond to the Complaint would be July 31, 2025.

**IV. Legal Standard**

When a party moves for dismissal under both Rule 12(b)(1) and other grounds, "the court should consider the Rule 12(b)(1) challenge first" because, following a dismissal for lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). Plaintiff bears the burden of establishing subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Courts generally lack subject matter jurisdiction over § 1983 claims against prosecutors because the doctrine of absolute immunity shields prosecutors in their individual capacity from liability for monetary damages." *May v. Levy*, 659 F. Supp. 3d 323, 335 (E.D.N.Y. 2023). Indeed, issues of "absolute immunity are properly considered under Rule 12(b)(1)." *Constantino-Gleason v. Unified Ct. Sys.*, 21-CV-6327 (JLS), 2023 WL 4052302, at *4 (W.D.N.Y. June 16, 2023) (citing *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 287 (W.D.N.Y. 2019)).

In addition, courts have also held that the defense of absolute immunity may be asserted in a 12(b)(6) motion where "the facts supporting the defense appear[ ] on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F3d 67, 74 (2d Cir. 1998)); *see also Deronette v. City of New York*, No. 05 CV 5275 SJ, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) ("Courts may consider absolute immunity on a 12(b)(6) motion to dismiss when facts establishing the defense appear directly in the complaint.") (citing *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995)).

When an immunity defense is asserted at the pleading stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

## V. Argument

### A. All of the claims against Siragusa should be dismissed on grounds of absolute immunity

#### 1. The doctrine of absolute immunity

At all times relevant to plaintiff's claims, Siragusa was acting in his prosecutorial capacity such that he is absolutely immune from suit and personal liability. *See Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (holding that absolute immunity "protects a prosecutor not only from liability but also from suit"). "Prosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.'" *Joyner v. Cnty. of Cayuga*, No. 20-CV-0060, 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)). The Supreme Court has held that absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citations omitted). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Id*.

Prosecutorial immunity is "broadly defined," and applies to "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill*, 45 F.3d at 661 (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). Among other things, "[t]he Supreme Court has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute

immunity side of the line." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (quoting *Buckley*, 509 U.S. at 273). In addition, because absolute immunity attaches to the function of the prosecutor, it also covers allegedly improper advocacy activities, including "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981), "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83, "the knowing use of perjured testimony," *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976), and the deliberate withholding of "exculpatory evidence," *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503-05 (2d Cir. 2004). The Second Circuit has also held that "absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it.'" *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) (quotation omitted).

Lastly, "[t]he doctrine of absolute prosecutorial immunity applies to shield liability in both federal civil rights and state common law tort actions." *Matthews v. Cnty. of Cayuga*, No. 17-CV-1004, 2018 WL 2926271, at *6 (N.D.N.Y. Apr. 18, 2018). More specifically, "[a]bsolute immunity is a defense not only to federal claims under § 1983, but also state law claims for false arrest and malicious prosecution." *Drayton v. Cnty. of Suffolk*, No. 20-CV-4772, 2021 WL 12351672, at *4 (E.D.N.Y. Dec. 10, 2021); *see also Shmueli v. City of New York*, 424 F.3d 231, 238 (2d Cir. 2005) ("The above principles, dealing with claims brought under § 1983, also protect a prosecutor against malicious prosecution claims brought under state law."); *Gentry v. New York*, No. 121CV0319GTSML, 2021 WL 3037709, at *5 (N.D.N.Y. June 14, 2021) ("These principles also protect a prosecutor against malicious prosecution claims brought under state law."); *King-Knight v. City of New York*, No. 23-CV-4648 (PKC), 2025 WL 950507, at *7 (S.D.N.Y. March 28, 2025)

("Because the ADA defendants are entitled to absolute immunity from King-Knight's claims brought under section 1983, the Court also concludes that they are entitled to the same immunity from all of King-Knight's state-law claims.").

**2. Siragusa is absolutely immune from the section 1983 and state law claims alleged by plaintiff**

As is clear from the face of the Complaint, and even accepting plaintiff's allegations as true for purposes of this motion to dismiss, Siragusa's conduct falls squarely within the traditional prosecutorial function during the judicial phase of the criminal process and is protected by the doctrine of absolute immunity. Accordingly, all of plaintiff's claims against Siragusa are barred such that the Court should dismiss them with prejudice.

First, Siragusa is entitled to absolute immunity because the Complaint's factual chronology confirms that his conduct occurred *during* the judicial phase of the criminal process. Indeed, Siragusa's involvement in plaintiff's prosecution began *after* plaintiff was (i) arrested by the Rochester Police Department and (ii) indicted by a grand jury. "Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial." *Moye v. City of New York*, No. 11 CIV. 316 PGG, 2012 WL 2569085, at *8 (S.D.N.Y. July 3, 2012); *see also Soley v. Cnty. of Nassau*, No. 18-CV-377 (ARR) (SJB), 2022 WL 2954055, at *5-6 (E.D.N.Y. July 26, 2022) ("Courts within the Second Circuit have consistently found that a prosecutor's failure to sufficiently investigate a case post-arrest is protected by absolute immunity.").

There are no allegations in the Complaint that Siragusa was involved in the pre-arrest and/or pre-indictment investigation of plaintiff. Rather, plaintiff's claims against Siragusa are premised on conduct occurring *after* he was arrested by the Rochester Police Department on

October 6, 1984, and indicted by a grand jury on October 12, 1984. *See* Compl. ¶¶ 42-44. Specifically, Siragusa's involvement in plaintiff's criminal prosecution began *more than six weeks post-indictment*, on November 26, 1984. *See id.* ¶ 49. Accordingly, Siragusa's conduct occurred *during* the "judicial phase of the criminal process" and is protected by absolute immunity. *Deskovic v. City of Peekskill*, 07-CV-8150(KMK), 2009 WL 2475001, at *12-13 (S.D.N.Y. Aug. 13, 2009) (despite plaintiff's contention that prosecutor had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial, the court dismissed on absolute immunity grounds, because the prosecutor's alleged misconduct occurred after indictment during the "judicial phase of the criminal process").

Second, Siragusa is entitled to absolute immunity because all of the alleged conduct that serves as the basis of plaintiff's claims falls squarely within the traditional prosecutorial function of evaluating evidence, interviewing witnesses, and preparing for trial. The Complaint alleges that Siragusa met with two witnesses, Dicker and Timmons, and offered them deals "in exchange" and "in return" for their false statements and trial testimony. *See* Compl. ¶ 49 (alleging that Siragusa "coerced and/or coached and offered Dicker to plea to lesser charges of attempted robbery *in exchange for Dicker's testimony at trial* of the *already indicted* . . . [plaintiff] for the Rico's Bar murders.") (emphasis added); *see also id*. ¶ 68 (alleging that Siragusa "arranged for Timmons to be immediately released from the Monroe County Jail *in return for his statement and testimony*."). Based on these two alleged events involving Dicker and Timmons, plaintiff's claims are that Siragusa fabricated and coerced false testimony; suborned perjury at trial; failed to disclose exculpatory evidence; failed to investigate; and failed to intervene and stop unconstitutional violations. *See, e.g., id*. ¶¶ 172(a), (d), (f), (g), (h), and (i); *see also id*., ¶¶ 194-201, 206-209).

However, even accepting the truth of these allegations, all of this conduct encompasses "acts undertaken by a prosecutor in preparing . . . for trial, and which occur in the course of his role as an advocate for the State, [and] are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273 (noting that the Supreme Court has specifically held that a prosecutor's "out-of-court 'effort to control the presentation of [a] witness' testimony' was entitled to absolute immunity because it was 'fairly within [the prosecutor's] function as an advocate'") (quoting *Imbler*, 424 U.S. at 430 n.32). More specifically, interviewing Dicker and Timmons during the then-pending criminal prosecution of the already-indicted plaintiff, and agreeing to offer both witnesses something in exchange for their testimony at plaintiff's trial, are acts quintessential to the function of a prosecutor in his role as advocate. This is well-settled law even accepting as true plaintiff's allegations of misconduct. *See Chapman v. City of Albany*, 1:23-CV-686 (LEK/PJE), 2025 WL 295011, at *4 (N.D.N.Y. Jan. 24, 2025) (holding that prosecutors "who offered two witnesses lenient sentences in exchange for their fabricated testimony would also receive absolute immunity"); *Buari v. City of New York*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2021) (inducing a witness to implicate a plaintiff falsely is an activity where absolute immunity applies); *Collins v. City of New York*, 923 F. Supp. 2d 462, 472 (E.D.N.Y. 2013) (noting that absolute immunity attaches when a prosecutor submits false evidence or suborns perjury); *Bruno v. City of New York*, No. 17 Civ. 7552, 2019 WL 690340, at *11 n.9 (S.D.N.Y. Feb. 19, 2019) ("[T]he alleged falsification of evidence and the coercion of witnesses . . . have been held to be prosecutorial activities for which absolute immunity applies" (internal quotation marks and citations omitted)).[4]

---

[4] Plaintiff's allegations of a "longstanding policy" against disclosing *Brady* material – albeit without any specific allegations concerning Siragusa – also concern protected activity. *See Brown v. Fallon*, 121CV00641TJMML, 2022 WL 4103998, at *9 (N.D.N.Y. Sept. 8, 2022) ("To the extent Plaintiff contends that ADA Fallon violated Plaintiff's rights by failing to disclose exculpatory Brady material, her decisions regarding the disclosure of Brady material fall squarely

In sum, all of plaintiff's allegations supporting his claims against Siragusa are related to Siragusa's role as an advocate and his performance of the prosecutorial function in a then-pending criminal prosecution. Accordingly, all of plaintiff's claims are barred by the doctrine of absolute immunity, including his § 1983 claims as well as his New York state law causes of action for false imprisonment, malicious prosecution, and negligence.

## VI. Conclusion

WHEREFORE, defendant Charles Siragusa respectfully requests that the Court enter an order dismissing with prejudice plaintiff's Complaint in its entirety as against defendant Siragusa, and granting such other and further relief as to the Court deems just, proper, and equitable.

Dated: July 25, 2025
Rochester, NY

*s/ Michael Rothenberg*

Michael Rothenberg, Esq.
David Rothenberg, Esq.
ROTHENBERG LAW
*Attorneys for Defendant Charles Siragusa*
45 Exchange Boulevard, Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
Email: michael@rothenberglawyers.com
Email: david@rothenberglawyers.com

within a traditional prosecutorial function during the judicial phase of the criminal process. She therefore is entitled to absolute immunity with regard the failure to make these disclosures.").

TO: Jonathan I. Edelstein, Esq. (via CM/ECF)
Edelstein & Grossman
*Attorney for Plaintiff*
501 Fifth Avenue, Suite 514
New York, NY 10017
(212) 871-0571

Alissa M. Brennan, Esq. (via CM/ECF)
Monroe County Department of Law
39 West Main Street
Room 307
Rochester, NY 14614
585-530-3100

John M. Campolieto, Esq. (via CM/ECF)
City of Rochester
City Hall, Room 400-A
30 Church Street
Rochester, NY 14614
(585) 428-7410